NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2020 VT 53

No. 2019-337

| | |
|---|---|
| Huntington School District | Supreme Court |
| | |
| | On Appeal from |
| v. | Superior Court, Franklin Unit, |
| | Civil Division |
| | |
| Vermont State Board of Education et al. | February Term, 2020 |

Robert A. Mello, J.

Stephen F. Coteus and Nicholas A.E. Low of Tarrant, Gillies & Richardson, Montpelier, for
  Plaintiff-Appellant.

Thomas J. Donovan, Jr., Attorney General, and David Boyd and Eleanor L.P. Spottswood,
  Assistant Attorneys General, Montpelier, for Defendants-Appellees State Board of Education
  and Vermont Agency of Education.

Pietro J. Lynn and Sean M. Toohey of Lynn, Lynn, Blackman & Manitsky, P.C., Burlington, for
  Defendant-Appellee Mount Mansfield Modified Unified Union School District.


PRESENT: Reiber, C.J., Robinson, Eaton, Carroll and Cohen, JJ.


¶ 1. **REIBER, C.J.** This case is one of several lawsuits challenging the implementation of Act 46, as amended by Act 49, regarding the involuntary merger of school districts. Plaintiff Huntington School District appeals the civil division's order dismissing plaintiff's complaint on motion of the two state defendants and granting defendant Mount Mansfield Modified Unified Union School District's motion for judgment on the pleadings.[1] We affirm.

---

[1] The other defendants in this case are the Vermont Agency of Education and the Vermont State Board of Education.

¶ 2.    Plaintiff raises four issues in this appeal.  We resolved three of those issues—contrary to plaintiff's position here—in our contemporaneously issued opinion concerning another challenge to the implementation of Acts 46 and 49—Athens School District et al. v. State Board of Education et al., 2020 VT 52, __ Vt. __, __ A.3d __.  In that opinion, we set forth a detailed history of the relevant law and procedural history concerning challenges to the Board of Education's final report and order merging school districts pursuant to Act 46, as amended by Act 49.  See id. ¶¶ 2-12.  In this opinion, we set forth only the law and procedural history relevant to plaintiff's single claim of error not decided in Athens School District: that the State Board of Education exceeded its delegated authority under Act 46 "by designating Huntington as a member of Mount Mansfield and purporting to subdelegate to Mount Mansfield the power to merge Huntington."

¶ 3.    In response to declining student enrollment and a large number of independent school districts in the state, the Legislature passed acts in 2010 and 2012 to incentivize voluntary mergers of school districts.  Its objective was to increase opportunity for students and decrease costs.  See 2009, No. 153 (Adj. Sess.); 2011, No. 156 (Adj. Sess.).  In 2011, the Chittenden East Supervisory Union (CESU) included seven autonomous school districts: Bolton, Huntington, Jericho, Richmond, Underhill/Jericho, and Underhill, each serving grades pre-K-4; and Mount Mansfield Union School District, a middle school/high school serving grades 5-12 for children in all seven of these districts.[2] Each of the seven districts had its own school board and budget.  That

---

[2] Definitions of the various types of school districts are helpful in understanding this opinion.  A union school district (USD) is a single legal entity encompassing two or more towns that provide for the education of all students of the member towns in the specific grades for which the district was created.  A unified union school district (UUSD) is a type of union school district that is responsible for the education of resident students of the member towns in all grades.  Pursuant to Act 156, as discussed herein, a modified unified union school district (MUUSD) provides for the education of all high school students of member towns of a former high school district as well as all elementary students of member towns voting in favor of merger.  A supervisory union (SU) is an administrative, planning, and educational service unit that provides

2

year, voters in two of the six CESU elementary school districts—Huntington and Richmond—defeated a proposal to create a single Regional Education District (RED) pursuant to Act 153. Because Act 153 required voter approval in all the districts in the proposed RED, the RED was not created.

¶ 4. In response, the Legislature passed Act 156. Act 156 changed the law so that a new MUUSD could be established—and become eligible for various incentives, including tax rate reductions and other transitional assistance—when a majority of the elementary school districts within an existing union district voted in favor of it. See 2011, Act 156 (Adj. Sess.), §§ 17(a)-(c). In 2014, after a CESU voluntary-merger committee recommended merging its seven member districts, the CESU held another merger vote. All the member districts except Huntington approved the proposed merger, thereby creating the Mount Mansfield Modified Union School District ("Mount Mansfield"). As a result, Huntington remained an independent elementary school district and no single supervisory union was formed. Huntington and Mount Mansfield remained as distinct entities overseen by the CESU, which, in turn, was managed by a board composed of members of the Huntington and Mount Mansfield boards.

¶ 5. In 2015, the Vermont Legislature passed Act 46, which established an initial voluntary merger phase, followed by an involuntary merger phase. The second phase called for the involuntary merger of districts that had not voluntarily merged into preferred educational governance structures—defined in part as a single supervisory school district responsible for the education of all pre-K-12 students within that district—unless those districts demonstrated that merger was impossible or impracticable or that an alternative structure best satisfied Act 46's goals. See 2015, No. 46, §§ 5(b), 8-10. In 2017, the Legislature passed Act 49, which, in relevant part, provided an additional merger incentive for districts that were exempt from involuntary

_____

services on behalf of member school districts. A supervisory district (SD) is a (SU) consisting of a single school district, which may be a UUSD.

3

merger but nonetheless agreed to merge with another district. 2017, No. 49, § 8 (amending § 10 of Act 46).

¶ 6.    In 2016 and 2018, Huntington voters twice rejected proposed voluntary mergers with Mount Mansfield pursuant to Act 46, thus preventing the creation of a preferred educational governance structure—a single supervisory school district—instead of the CESU, the Mount Mansfield Modified Unified Union School District, and the Huntington School District. In its involuntary phase, Act 46 required the Agency of Education to make recommendations, and the State Board of Education to issue a final report and order, concerning additional mergers to meet Act 46's goals. See 2015, No. 46, §§ 8-10. In June 2018, the Agency issued a proposed statewide plan for school district governance. In relevant part, the plan recommended the merger of the Huntington and Mount Mansfield school districts into a single UUSD by requesting Mount Mansfield to accept Huntington as a member. Because Huntington had a governance structure different from the preferred structure identified in Act 46, it was required to propose an alternative structure for its elementary students supported by data demonstrating that the proposed structure would meet or exceed Act 46's goals. See id. § 9(a). Under the Act, the Board could approve only those § 9 proposals demonstrating that the proposed "alternative structure" was "the best means of meeting" Act 46's goals in the "region." Id. § 8(b)(1).

¶ 7.    Huntington decided not to submit a § 9 proposal pursuant to Act 46 and the Board's regulations, but the Board allowed Huntington to make an oral presentation in support of its assertion that it should remain independent in light of Act 46's goals. After considering its presentation, the Board concluded in its final order that Huntington "did not make a compelling case sufficient to overcome the preferred governance structure presumption in Act 46 and did not assert that the merger is not 'possible' or 'practicable' to assume full pre-K-12 membership in the unified district." Accordingly, the Board ordered the Huntington School District merged into the

4

Mount Mansfield Modified Unified Union School District, provided that a majority of the voters in Mount Mansfield's member districts approved.

¶ 8. In December 2018, prior to the merger vote, plaintiff filed suit against defendants, seeking to prevent Huntington's unilateral merger into the Mount Mansfield Modified Unified Union School District. In relevant part, plaintiff alleged in its four-count complaint that because Mount Mansfield was a union school district receiving incentives under Acts 153 and 156, the Board could not order Huntington to merge or otherwise alter its governance structure pursuant to § 10(b) of Act 46. Plaintiff also alleged that the Board acted beyond its authority by calling for Mount Mansfield to vote on merger pursuant to 16 V.S.A. § 721, while at the same time not allowing plaintiff to veto the merger by its own vote under the same statute. The state defendants moved to dismiss plaintiff's complaint for failure to state a viable claim for relief, and Mount Mansfield moved for judgment on the pleadings.

¶ 9. On June 19, 2019, following a hearing, the civil division granted defendants' motions. In relevant part, the civil division ruled that Act 46 permitted the Board to merge the Huntington district into the Mount Mansfield district upon the sole approval of Mount Mansfield district voters alone and without the consent of Huntington voters.

¶ 10. Plaintiff appeals to this Court, raising four issues. As noted, the only remaining issue in light of our opinion in Athens School District is whether the Board exceeded the authority delegated to it in Act 46 "by designating Huntington as a member of Mount Mansfield and purporting to subdelegate to Mount Mansfield the power to merge Huntington."

¶ 11. "Review of the grant of a motion to dismiss and the grant of a motion for judgment on the pleadings employ similar standards." Messier v. Bushman, 2018 VT 93, ¶ 9, 208 Vt. 261, 197 A.3d 882. A motion to dismiss should be granted only if "there exist no facts or circumstances under which the nonmovant may be entitled to relief." Id. (quotation omitted). Our decision in this case turns solely on our interpretation of the relevant statutes. As a question of pure law, our

interpretation of a statute is non-deferential.  State v. Therrien, 2011 VT 120, ¶ 9, 191 Vt. 24, 38 A.3d 1129.  As we explained in Athens School District, when construing statutes, this Court's ultimate goal is to discern the Legislature's intent, first by examining the plain meaning of the statute and, when necessary, "by considering the entire statute, including its subject matter, effects and consequences, as well as the reason and spirit of the law."  2020 VT 52, ¶ 19 (quotation omitted).  However, to the extent that the language of an enabling statute is ambiguous or subject to multiple reasonable interpretations regarding legislative intent, this Court "will not substitute [its] judgment for the Board's reasonable interpretation of its authority pursuant to that statutory language."  Id. ¶ 18.

¶ 12.    Plaintiff argues that the Board exceeded its authority under the plain language of § 10(e)(3) of Act 46, as amended by Act 49,[3] by exempting Mount Mansfield, but not Huntington, from involuntary merger in its final order pursuant to § 10(b).  According to plaintiff, the Board had to either exempt both the Huntington and Mount Mansfield districts or neither of them from involuntary merger under § 10(b).  In plaintiff's view, exempting Mount Mansfield but not Huntington was not a merger order but rather a subdelegation for Mount Mansfield district voters to unilaterally determine whether the merger should take place.

¶ 13.    For the reasons detailed below, we conclude that the Board's final order concerning the Mount Mansfield and Huntington districts is consistent with the provisions set forth in Act 46, as amended by Act 49.  Huntington was not exempted from involuntary merger under the plain language of § 10(e).  Further, the Board reasonably construed that provision in treating Mount Mansfield as exempt from involuntary merger.  In any event, to the extent the Board erred by not ordering Mount Mansfield to merge with Huntington, any such error was cured when Mount Mansfield voted to merge with Huntington.  Finally, the Board's order conditioning merger on

---

[3] Section 10(e)(3) was originally set forth in § 10(c)(3) of Act 46.  Compare 2015, No. 46, § 10(c)(3), with 2017, No. 49, § 8.

approval of Mount Mansfield voters did not constitute an unlawful delegation of the Board's authority to Mount Mansfield.

¶ 14. Section 10(b) of Act 46 requires the Board to approve or amend the Agency's proposed involuntary mergers or realignments in a published final order. In relevant part, § 10(e)(3) provides that § 10 does not apply to a district that began operating as a "unified union school district" between June 2013 and July 2019 and is a RED "or any other district eligible to receive incentives" under Acts 153 and 156. According to plaintiff, both Mount Mansfield and Huntington are equally positioned with respect to these two criteria, insofar as: (1) both Huntington and Mount Mansfield received tax breaks for creation of their then-current governance structures; and (2) neither Huntington nor Mount Mansfield operated as a unified union school district because Huntington continued to exist as a separate school district, thereby preventing Mount Mansfield from becoming a unified union school district.

¶ 15. This argument does not withstand scrutiny. Section 10(e)(3) makes Mount Mansfield exempt from § 10(b) because Mount Mansfield began to operate as a type of unified union school district—a modified unified union district—between the specified dates and was eligible to receive incentives under Acts 153 and 156. Act 153 created a voluntary school district merger incentive program that made incentives "available to each new unified union school district" created pursuant to the Act. 2009, No. 153 (Adj. Sess.), § 2(a). Apart from establishing an additional incentive, § 17 of Act 156, entitled "Modified Unified Union School District," temporarily expanded the availability of the Act 153 incentives when "a majority but not all" of the elementary school districts in member towns voted to establish a "unified union school district," thereby establishing "a new modified union school district." 2011, No. 156 (Adj. Sess.), § 17(a), (c). Although this section refers to establishment of "a new modified union school district" (despite being entitled, "Modified Unified Union School District") when a majority but not all member towns voted to establish a unified union school district, the Legislature has made it clear

7

that such districts formed under § 17 of Act 156 are to be considered "a modified unified union school district" for purposes of tax rate calculations. 2017, Act 49, § 22 (emphasis added).

¶ 16. In short, for the purpose of § 10(e)(3)(B), Mount Mansfield was established as a type of unified union school district eligible for the same incentives as any other unified union school district by virtue of its voluntary merger. Huntington, on the other hand, is not a type of unified union school district, but rather a lone holdout elementary school district that necessitated the creation of the Mount Mansfield Modified Unified Union School District.[4]

¶ 17. If we accepted plaintiff's argument and construed § 10(e)(3)(B) to exclude modified unified union school districts established by Act 156, that subsection would be superfluous because no unified union school district that is not a modified unified union district could meet its criteria. See Judicial Watch, Inc. v. State, 2005 VT 108, ¶ 14, 179 Vt. 214, 892 A.2d 191 (stating that we will not interpret a statute in a way that renders language surplusage). Moreover, § 10(f), which was added in Act 49, would have no meaning. See 2017, No. 49, § 8. That section makes a supplemental $10,000 grant available to a school district that is eligible for incentives under Acts 153 and 156 and that votes to merge with another school district either on its own initiative or at the Board's request. Id. That provision has meaning only if it applies to districts that are exempt from involuntary merger—there was no reason for the Legislature to empower the Board to provide an incentive for a district to merge upon the Board's request if the

---

[4] Because Huntington is not a type of unified union school district, and thus does not satisfy the first criterion under § 10(e), we need not address its contention that it was eligible for tax incentives under Acts 153 and 156, the other criterion under § 10(e). We note, however, that Acts 46 and 49, including § 10(e), refer to districts, not residents, and that three of the four incentives are grants rather than tax incentives. The Huntington School District cannot satisfy the eligible-for-incentives criterion in § 10(e) merely because Huntington residents benefit from a tax incentive as the result of Huntington middle and secondary school students attending the Mount Mansfield Modified Unified Union School District.

8

Board could simply order that district to merge. If Mount Mansfield, as a modified unified union district, is not eligible under § 10(f), then no district is, and § 10(f) is surplusage.[5]

¶ 18. Accordingly, we find unavailing plaintiff's argument that Act 46, as amended by Act 49, did not authorize the Board to order Huntington to merge with Mount Mansfield conditioned upon the consent of the voters in Mount Mansfield's member districts. Mount Mansfield, but not Huntington, was exempt from involuntary merger under § 10(e). Based on its conclusion that Huntington failed to overcome the preferred-governance-structure presumption in Act 46, and the fact the Huntington was not exempt from involuntary merger, the Board ordered Huntington to merge with Mount Mansfield. But because, as explained above, § 10(e) exempted Mount Mansfield from involuntary merger by the Board, the Board conditioned the merger of Mount Mansfield and Huntington on voter approval in Mount Mansfield's member districts. The Legislature plainly anticipated such an order. As noted, Act 49 added § 10(f)(1)(B), which provides an additional incentive to a district that is exempt from involuntary merger but nonetheless "at the request of the State Board, agrees by vote of its electorate to merge with another school district." See 2017, No. 49, § 8.

¶ 19. Nor do we find any merit in plaintiff's argument that the Board unlawfully subdelegated its authority to Mount Mansfield. Rather, as authorized by Acts 46 and 49, the Board, not Mount Mansfield, reviewed the Agency's proposed statewide plan, considered the § 9 proposals for alternative governance structures, and then ordered Huntington to merge with Mount

---

[5] We acknowledge that if Mount Mansfield is exempt from § 10 of Act 46 by virtue of the exemption in § 10(e)(3)(B), then one could argue that it is likewise ineligible for the $10,000 incentive pursuant to § 10(f), since the exemption in § 10(e)(3)(B) makes all of § 10 inapplicable to exempt entities. That uncertainty may well stem from the fact that when Act 49 added § 10(f), it left intact, possibly inadvertently, § 10(c), which became § 10(e). In any event, we understand Huntington to be challenging the Board's exempting Mount Mansfield from the involuntary merger provisions of § 10, and do not understand Huntington to be seeking a declaration that Mount Mansfield is ineligible for the grant in § 10(f). Thus we do not directly address such a claim. But, as noted above, it is hard to imagine how § 10(f) could have any meaning if it did not apply to districts that are otherwise exempt from involuntary mergers.

Mansfield conditioned upon Mount Mansfield's acceptance of Huntington in accordance with the exemption from involuntary merger afforded to Mount Mansfield pursuant to § 10(e).

¶ 20. Furthermore, even if we concluded that § 10(e) did not exempt Mount Mansfield from involuntary merger, any error on the Board's part in not considering Mount Mansfield exempt was cured by Mount Mansfield voting to include Huntington. Plaintiff suggests that the process was skewed by any such error because Huntington was compelled to submit a § 9 proposal as a lone district. But even if the Board had not considered Mount Mansfield exempt from involuntary merger, the alternative would have been to order the merger of Mount Mansfield and Huntington rather than conditioning the merger on Mount Mansfield's approval.

¶ 21. Finally, we rejected in Athens School District the reasoning underlying plaintiff's argument that the Board acted beyond its authority by giving Mount Mansfield the opportunity to vote on merger pursuant to 16 V.S.A. § 721, but not giving Huntington the same opportunity under the same statute. See 2020 VT 52, ¶¶ 30-34. As we stated with respect to the plaintiffs in Athens School District, plaintiff in this case has not demonstrated that the Board failed to apply any Title 16 provisions in circumstances in which they were applicable. See id. ¶ 34.

Affirmed.

FOR THE COURT:

_____
Chief Justice

¶ 22. **EATON, J., dissenting.** For the reasons set forth in Athens School District et al. v. State Board of Education et al., 2020 VT 52, __ Vt. __, __A.3d __, I dissent.

¶ 23. I am authorized to state that Justice Cohen joins in this dissent.

_____
Associate Justice

10